# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

FILED

02 JUN 25 AM II: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

HATTIE ANN JONES,                    ]
                                     ]
    Plaintiff(s),                ]
                                     ]
vs.                                  ]    CV-00-N-0483-S
                                     ]
BELLSOUTH,                           ]
                                     ]
    Defendant(s).                ]

ENTERED

JUN 2 5 2002

## Memorandum of Opinion

### I.    Introduction

Presently before the court is the task of determining what attorneys' fees, costs, and expenses are due counsel for the plaintiff, Richard J. Ebbinghouse. (Doc. # 76, 84). The parties have submitted arguments and evidence in support of their positions. Additionally, Mr. Ebbinghouse has submitted a motion to strike the defendant's submission. (Doc. # 89). That motion is due to be **DENIED**.[1] As for the more substantive issue pending, the court finds it adequately addressed by the parties and ripe for decision.

### II.    Background

The above-styled action was commenced by the plaintiff on February 28, 2000. (Doc. # 1). Invoking the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and

---

[1]This matter is before the court on motion of the plaintiff. The court, therefore, declines to impose the draconian sanctions sought by the plaintiff for the defendant's belated filing, and **DENIES** the motion to strike. The court notes, however, that it has reviewed the arguments plaintiff's counsel has included in his motion to strike that do not relate to the subject of the motion itself, but instead relate to the separate and distinct request for fees, costs, and expenses.



42 U.S.C. §§ 1981 and 2000e, *et seq.*, the plaintiff alleged that she was the victim of unlawful

race discrimination in the workplace, and prayed for the court to

> (1) Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant are violative of the rights of the plaintiff as secured by Title VII and 42 U.S.C. 1981;

> (2) Grant plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate Title VII, and 42 U.S.C. 1981;

> (3) Enter an Order requiring the defendant to make the plaintiff whole by awarding the plaintiff the position the plaintiff would have occupied in the absence of violation of Title VII and Section 1981 and also back-pay (plus interest), nominal, compensatory, punitive, and liquidated damages, lost seniority, benefits, lost pension benefits, and front-pay to the extent applicable to each statute;

> (4) Award all costs of this proceedings (sic), including the payment of expenses and reasonable attorney's fees; and

> (5) Such other and further relief as this Honorable Court deems appropriate, including nominal damages and/or any other relief provided for under law or equity.

(*Id.*). Approximately eighteen months later, on September 11, 2001,[2] the parties settled this

action, save the issue of attorneys' fees, costs and, expenses. Pursuant to the settlement

agreement, the plaintiff received $17,000 in back pay. (Doc. # 88, Ex. 1). In return, the

---

[2] Counsel for plaintiff repeatedly makes reference to the fact that the trial of this action was set to take place on September 13, 2001, and that settlement took place while the tragedy of 9/11 unfurled in New York, Washington, D.C., and Stony Creek Township, Pennsylvania. The court is truly unsure what the plaintiff would have it take from these facts. The court is certainly not going to factor the events of 9/11 into an award of attorneys' fees. Moreover, the court notes that no motion for continuance was filed by either party on or after September 11, 2001. Indeed, the undersigned himself was unavailable for trial on September 13, 2001, having been directly affected by the national grounding of air traffic. Thus, the fact that the parties chose to settle on September 11, 2001, possesses no relevance to the present issue beyond perhaps a demonstration of wise – or unwise – litigation strategy, or perhaps a demonstration of lawyers recognizing their place in, and their inability to control, a grander scheme.

plaintiff agreed to fully and finally release the defendant from all claims, whether or not actually asserted, and whether known or unknown, including all claims under the Employee Retirement Income Security Act; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; Section 1981 of the Civil Rights Act of 1870; the Family Medical Leave Act; and "any other federal, state or local law . . . ." (*Id.*). The plaintiff also agreed to maintain a strict level of confidence with respect to the settlement, disclosing "only that the case was resolved to the mutual satisfaction of the parties."[3] Finally, the parties agreed that the settlement "shall not otherwise in any way be construed as an admission by BellSouth of liability or of any acts of wrongdoing or discrimination." (*Id.*).

Additional facts relevant to the court's analysis are set forth where appropriate.

### III.   Standard

The lodestar methodology guides the fee determination this court has been asked to render. *See Gisbrecht v. Barnhart*, No. 01-131, 2002 U.S. LEXIS 3793, at *25 (May 28, 2002) ("[T]he lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation."); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("[O]ur case law construing what is a 'reasonable' fee applies uniformly to all [federal fee-shifting statutes.]").[4]  "[I]deally, . . .

---

[3] Certain exceptions were included in the settlement with respect to the confidentiality agreement, such as the plaintiff being able to discuss the settlement with her immediate family, with an accountant or other financial agent for tax and related purposes, or during consultations with an attorney at any time during the future.

[4] *Cf. Gisbrecht, supra*, at *38 n.1 (Scalia, J., dissenting) ("The Court finds it unlikely that 42 U.S.C. § 406(b), enacted in 1965, contemplated application of the lodestar method that the courts had not yet even developed. Of course it did not. But it *did* contemplate an *ex post* determination of a reasonable fee for an attorney's work – which our post-1965 cases have held is best achieved by using the lodestar." (quotations and citations omitted,

3

litigants will settle the amount of a fee.  But where settlement between the parties is not possible, the most useful starting point for [court determination of] the amount of a reasonable fee [payable by the loser] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Gisbrecht, supra* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983) (quotations and citations omitted)).[5]  The starting point; however, is just that: a starting point.

> The product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained.  Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1492 (11th Cir. 1994); *see also Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306-07 (11th Cir. 2001); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

### IV.   Discussion

### A.   Reasonable Rate

"[A] reasonable hourly rate [is] 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'"  *Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387, 1389 (11th Cir.

---

emphasis in original, and citing 42 U.S.C. § 2000e-5(k) (Civil Rights Act of 1964))).

[5]For the sake of analytical completeness, the court notes that counsel is not entitled to fees unless the plaintiff is a "prevailing party."  The parties do not dispute plaintiff's status as a prevailing party, however, and the court finds that she is such a party within the confines of the law.  *Cf. Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.  The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.").

4

1997) (quoting *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.

1988)).

> The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

*Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also*

*Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (noting that a party requesting

fees "may meet his burden by producing either direct evidence of rates charged under

similar circumstances or opinion evidence of reasonable rates."). Likewise of assistance

in determining an hourly rate are several factors[6] articulated by the former Fifth Circuit in

*Johnson v. Georgia Highway Express, Inc. See Norman*, 836 F.2d at 1299-1300; *see also*

*Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1340 (11th Cir. 1999); *Miller v. Kenworth of*

---

[6]Those factors are:

1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

*Farley*, 197 F.3d at 1340 n.7 (quotations omitted).

*Dothan, Inc.*, 117 F. Supp. 2d 1247, 1254-55 (M.D. Ala. 2000); *cf. Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[7]

The evidence submitted by Mr. Ebbinghouse, quite frankly, does little to assist this court in the determination of a reasonable hourly rate. The submission includes an affidavit by Mr. Ebbinghouse stating that his current hourly rate is $250.00; citations to cases where Mr. Ebbinghouse has received a fee calculated at a rate of either $250.00 or $225.00; and affidavits by two attorneys practicing in the area of civil rights law – Messrs. Richard A. Meelheim and Charles I. Brooks – stating that the rate of $250.00 requested by Mr. Ebbinghouse is reasonable and within the range of rates charged in the relevant market. Several of the cases cited by Mr. Ebbinghouse, however, have no bearing on the instant case. For example, Mr. Ebbinghouse directs the court to the case of *Reynolds v. Alabama Department of Transportation*, 85-T-665-N, where he received fees and continues to bill at an hourly rate of $250.00. Mr. Ebbinghouse does not discuss, however, the complexity or history of the *Reynolds* case. A similarly complex case, *Woods v. Hunt*, 87-C-2812-S, saw Mr. Ebbinghouse receive fees at an hourly rate of $225. Yet like *Reynolds*, the history and subject matter of *Woods* renders it inapposite and inappropriate as a benchmark for this *single plaintiff, single issue* Title VII action. The submissions are not detailed enough for

---

[7] As the plaintiff observes, the process by which a court ascertains a reasonable hourly rate is guided, but not controlled, by *Johnson* and its twelve factors. *See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561-66 (1986); *Hensley*, 461 U.S. at 434 n.9 (noting that many of the "factors identified in *Johnson* . . . are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). At least one of the factors has been discredited, however, as inapplicable in the determination of a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 566 (1992) ("Contingency enhancement is therefore not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee."); *see also Murphy v. Reliance Std. Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001). This court therefore declines to consider the contingent nature of the arrangement between the plaintiff and her counsel in calculating what fee is reasonable here. *Cf. Miller*, 117 F. Supp. 2d at 1254 n.3.

the court to determine how a third case, *Byrd v. Lakeshore Hospital*, et al., 91-P-2863-S, relates to the instant one. In that case, Mr. Ebbinghouse appears to have received an award at an hourly rate of $250.00. The court does note that Mr. Ebbinghouse received a judgment in that action of back pay in the amount of $53,949.35.[8] As for a fourth case, *Jones v. Holiday Inn*, 89-C-0039-S, he received an award of approximately $56,422.15, at an hourly rate of $225.00. A judgment was had in that case as well: reinstatement and an award of back pay in the amount of $26,096.99.

The affidavits proffered by Messrs. Meelheim and Brooks agree that the prevailing market for lawyers practicing in this area varies between $175.00 to more than $350.00, depending upon the skill level of the attorney, the sophistication of the client, and the attorney's ability to negotiate a compensatory rate. The two attorneys also agree that, given Mr. Ebbinghouse's skill and knowledge in the area of civil rights law, an hourly rate of $250.00 is reasonable. The affidavits make clear that the practices of both attorneys are in part "devoted to the area of civil rights law" – including the representation of plaintiffs. Thus, the court is forced to question the persuasiveness of these affidavits. The court does not believe they should be stricken, but as Mr. Ebbinghouse himself observed during the course of this action, "the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact." (Doc. # 45, p. 12 (quoting *Sonnentheil v. Christian Moerlein Brewing*

---

[8] *See Orix Credit Alliance v. Delta Resources (In re Delta Resources)*, 54 F.3d 722, (11th Cir. 1995) ("[T]his Court may take judicial notice of another court's order ... for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation and related filings.").

*Co.*, 172 U.S. 401, 408 (1899)). The court thus turns to other relevant considerations in its quest to determine a reasonable hourly rate.

Mr. Ebbinghouse points to several *Johnson* factors as indicative of the accuracy of his requested rate. First, he notes that had he not assumed representation of Ms. Jones in this action, he would have been working on the aforementioned *Reynolds* case, billing time at a rate of $250.00 an hour. (Doc. # 87, Ex. A, p.19) ("Had I not had to expend the time spend (sic) on this case, I would have been working on the Reynolds case and other non-contingent cases for which I would have received full compensation for all of the hours I worked."). Second, he argues that the contingent nature of the representation justifies a higher rate, given the risks attorneys who accept contingent plaintiffs accept. Third, he contends that the "stigma" of civil rights litigation warrants the rate requested, given that such litigation negatively impacts his appeal to "high-paying commercial clients . . . ." (Doc. # 86, pp. 11-12 (quoting *Stokes v. City of Montgomery*, 706 F. Supp. 811, 815 (M.D. Ala. 1988)).

The court is unimpressed with Mr. Ebbinghouse's application of these three *Johnson* factors. First, Mr. Ebbinghouse's claim that he gave up work on the more lucrative *Reynolds* case to represent the plaintiff here resembles the sort of conclusory and unsubstantiated evidence described as "unsatisfactory" by the Eleventh Circuit in *Norman*. *See Norman*, 836 F.2d at 1299. It is likely that Mr. Ebbinghouse spent fewer hours working on the *Reynolds* case as a result of his efforts on this action, but the court has nothing before it delineating the specifics of the loss, and strongly doubts that Mr. Ebbinghouse lost one hour on *Reynolds* for every hour worked here (totaling seven hundred and forty-seven (747)

8

hours).[9] As for the fact that Mr. Ebbinghouse took this case on a contingent fee basis, the court directs counsel to the discussion set forth *supra* footnote seven.

Finally, in the absence of any specific evidence to the contrary, the court finds unpersuasive Mr. Ebbinghouse's contention that the undesirability of this case and the stigmatizing effects of civil rights litigation support the rate requested. There is, of course, a historical basis for this contention, and the history may well be recent. But the court cannot help but recognize that Mr. Ebbinghouse is associated with a firm that frequently and actively practices in the civil rights arena. The benefit of the doubt says that he does so to assist parties in the vindication of their constitutional and statutory rights. But the court cannot be blind to what are clearly conscious economic choices driving this lawyer, his firm, and other firms and lawyers like them to tailor their practices to this sector of the legal economy.[10]

Two other *Johnson* factors are worth noting: (1) the novelty and difficulty of the questions involved in the case; and (2) the nature and length of the professional relationship

---

[9] Indeed, given the number of hours expended in this case – a fact discussed in greater detail *infra* – the court questions whether an hour with respect to this action is accurately described as fungible with an hour of work on the *Reynolds* case. The court is less impressed by Mr. Ebbinghouse's opportunity cost argument, however, because the argument ignores the fact that Mr. Ebbinghouse works in a firm. In the absence of any evidence to the contrary, the court must assume that the *Reynolds* case and actions like it continued to receive attention by other firm attorneys while Mr. Ebbinghouse expended time on this case. Thus, the opportunity cost to the firm of Mr. Ebbinghouse's taking on this case is more accurately valued at the cost to the firm of his taking on a contingent Title VII case as opposed to his taking on a non-contingent case. Approximating this value would necessarily require the court to consider a host of economic realities and influences, such as the willingness of non-contingent clients to select Mr. Ebbinghouse and his firm over another lawyer or firm. Suffice it is to say that the court has no evidentiary basis upon which to approximate this opportunity cost.

[10] *Cf. Johnson v. Stone Container*, 88 F. Supp. 2d 1295, 1302 & n.7 (N.D. Ala. 2000) (Hancock, J.).

9

with the client.[11]  Mr. Ebbinghouse maintains that this case presented "factual issues . . . [that] were difficult and highly risky."  The court disagrees.  A review of the responsive submission filed by the plaintiff in opposition to the defendant's motion for summary judgment reveals the straightforwardness of the issues underlying this action.[12]  This case involved a failure to promote claim under Title VII.  The legal issues were simple, and indeed the bulk of the filings in this case concerned procedural deficiencies in the defendant's answers to interrogatories.  As for the relationship between Mr. Ebbinghouse and the plaintiff, it seems that their relationship commenced with the development and eventual commencement of this action.

Having reviewed the evidence, the court realizes that it has very little before it supporting Mr. Ebbinghouse's request for $250.00 as a reasonable hourly rate.  Based upon what it does have before it, and "its own knowledge and experience", the court believes that a reasonable hourly rate for Mr. Ebbinghouse, *for this action*, is $200.00 per hour.[13]

## B.    Hours Reasonably Expended

---

[11] An equally important factor requires an examination of the amount involved and the results obtained. This factor, however, is reserved until after a lodestar amount is calculated.  *See Cullens*, 29 F.3d at 1492 (and cases cited).

[12] *See, e.g.*, Doc. # 45, p. 24.  A review of this submission also reveals a stunning lack of efficiency and restraint exercised by counsel for the plaintiff.  *See, e.g.*, Doc. # 45, pp. 9-14.

[13] The court is reminded of a letter written by Abraham Lincoln to one George P. Floyd, of Quincy, Illinois, in the winter of 1856:

Dear Sir: I have just received yours of 16th, with check on Flagg & Savage for twenty-five dollars. You must think I am a high-priced man.  You are too liberal with your money.  Fifteen dollars is enough for the job.  I send you a receipt for fifteen dollars, and return to you a ten-dollar bill.

Abraham Lincoln, *To George P. Floyd*, *in* Abraham Lincoln: Speeches and Writings 1832-1858 (Don E. Fehrenbacher ed., 1989).

10

This court must next determine the number of hours reasonably expended on the litigation. As both parties note, this determination excludes those hours the court finds to be excessive, redundant, and otherwise unnecessary. See *Hensley*, 461 U.S. at 434. Mr. Ebbinghouse has submitted detailed billing reports in support of the hours he deems reasonable and meriting an award of fees. The defendant has objected to several of these requests. Notwithstanding Mr. Ebbinghouse's averments to the contrary, the court believes that a great deal of the time he expended on this case was excessive, redundant, and otherwise unnecessary.

First, the court agrees with the defendants that several of the billing entries – discussed in greater detail in the defendant's filing on this motion for fees (Doc. # 8, pp. 6-8) – indicate excessive, redundant, and otherwise unnecessary hours billed on the case. Mr. Ebbinghouse, by his own account, is an attorney with twenty-four years experience in federal civil rights litigation, having handled numerous trials and appeals. Based upon his billing entries, however, the court is to believe, for example, that two deposition notices required eight (8) hours of his time; that preparation for two depositions – which combined took seven (7) hours – required more than forty-eight (48) hours of his time; and that an opposition to a motion for summary judgment – a motion premised upon a single argument – required more than one hundred thirteen (113) hours. If Mr. Ebbinghouse possesses the skill and talent that he and his fellow attorneys claim he does, then these instances and others like them represent excessive, redundant, and otherwise unnecessary hours billed on this case.

11

Accordingly, the court reduces by three hundred ten (310) the number of hours included by Mr. Ebbinghouse in his request for fees. This number represents the number of hours claimed as excessive by the defendant in its submission combined with slightly more than sixty hours not discussed by the defendant but in the opinion of the court meeting the description of excessive, redundant, and otherwise unnecessary.[14] This results in a total number of hours reasonably expended of four hundred thirty-seven and three one-hundredths (437.03). Multiplying these hours by the reasonable hourly rate of $200.00, the court reaches a lodestar figure of $87,406.00.

## C.   Adjustments

With the lodestar figure in place, this court must look at the circumstances surrounding the case and consider whether upward or downward adjustments should be made. "Among the many considerations a court must entertain . . . 'the most critical factor is the degree of success obtained.'" *Villano*, 254 F.3d at 1305 (quoting Hensley, 461 U.S. at 436). As discussed *supra*, the plaintiff's prayer for relief sought back pay, injunctive relief, and compensatory and punitive damages. In the pretrial order entered by this court on August 24, 2001, the plaintiff stated that she was claiming compensatory damages in the amount of $350,000 and punitive damages in the amount of $350,000. (Doc. # 64, p. 4). When the parties eventually settled, the plaintiff received $17,000 in back pay. In return for

---

[14] This figure has been reached by adding time Mr. Ebbinghouse spent on the motion to alter or amend judgment, time Mr. Ebbinghouse spent preparing for a trial that never took place, and time Mr. Ebbinghouse spent preparing the fee request currently before the court. In view of the court, and based upon its knowledge and experience, the number of hours expended here are excessive, redundant, and otherwise unnecessary. For example, the court in no way believes that this fee request – a request that Mr. Ebbinghouse and his firm have made of many courts over the years – required fifty (50) hours to prepare.

12

this amount, plaintiff agreed to a host of restrictions that included, *inter alia*, a stipulation that the settlement constituted no admission of liability on the part of the defendant.

Mr. Ebbinghouse offers a host of assertions on this point. First, he contends that the measure of success cannot be made strictly upon numerical or monetary terms. (Doc. # 86, pp. 15-18). This is, of course, true. "[S]uccess in a civil rights claim is measured differently than success in a private tort claim. . . . Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Villano*, 254 F.3d at 1305 (citations and quotations omitted). "[S]uccessful civil rights actions vindicate a public interest." *Id.* at 1307. But where, as here, the result obtained is virtually indistinguishable from a severance package or a bonus, the court is reluctant to say that plaintiff's counsel did much to vindicate or advance anything more than plaintiff's individual rights.

Mr. Ebbinghouse also argues that this court should not consider the request in the pretrial order for compensatory damages of $350,000 and punitive damages of $350,000. He directs this court to the actual language of the pretrial order, which provides:

> By so listing such an amount for compensatory and punitive damages, the plaintiff is not suggesting how much the jury should indeed award . . ., but lists such amounts to comply with the Pretrial Order in this action. It is the intent of the plaintiff by this designation of damages to simply enable the jury to award such amount in its good judgment as it deems appropriate . . . [and] should not be construed as seeking any amount different than what the jury in its fair and good judgment awards and should not be used to reduce any attorney's fees and costs that otherwise would be awarded . . . .

(Doc. # 64, p. 4; *see also* Doc. # 86, p. 19; *Waldrop v. Southern Co. Servs., Inc.*, 24 F.3d 152, 154-55 & n.1 (11th Cir. 1994)). He then notes that the plaintiff, during an effort by the

13

parties to mediate the case, made an offer to settle for $20,000.00 inclusive of costs, expenses and attorney's fees, and "instatment" (sic) into the position she allegedly failed to receive as a result of the defendant's discriminatory behavior. (Doc. # 86, p. 7, 19). The existence of this offer, Mr. Ebbinghouse maintains, belies any contention that "the actual goal of this litigation is some greater amount than was recovered . . . ." (*Id.*).

The Eleventh Circuit has explained that "a court remains obligated to account for all distinct measures of success when determining whether success was limited." *Villano*, 254 F.3d at 1308. This court, therefore, will not ignore the $700,000 figure stated in the pretrial order. If this figure was, as Mr. Ebbinghouse avers, some arbitrary number included solely to enable a jury to award compensatory and punitive damages, then Mr. Ebbinghouse could quite easily have effected a similar result through the selection of a lower figure commensurate with the "goal" of the litigation.[15] The court doubts the arbitrariness of the specification, however, as the pretrial order plainly states that "[t]his sum of compensatory damages includes associated benefits, damages to the plaintiff's reputation, humiliation, emotional damage, and destruction of her health." (Doc. # 64, p. 4).

Taking the relief sought by the plaintiff in this action, and juxtaposing it against the relief actually obtained, the court concludes that the plaintiff achieved a somewhat limited degree of success in this action. As noted *supra*, the plaintiff received $17,000 in back pay. She received no compensatory or punitive damages for "associated benefits, damages to the [her] reputation, humiliation, emotional damage, and destruction of her health." She

---

[15]Furthermore, Mr. Ebbinghouse could have protected the plaintiff's ability to receive a greater sum of compensatory and punitive damages – notwithstanding the specification of a lower figure in the pretrial order – by simply using the same right-reserving language actually set forth in the order.

14

received no declaratory or injunctive relief. She was not "instated" into the position for which she sought promotion. And finally, she received no admission from the defendant of wrongdoing.

The defendant asks this court to reduce the fee awarded to Mr. Ebbinghouse to $34,000, or double the amount due plaintiff by virtue of the settlement. The court believes that such a reduction is too steep, and fails to take into account that a portion of the hours expended in this case arose as a result of the defendant's recalcitrant behavior during discovery. Accordingly, the court finds that counsel for plaintiff is due an award of $59,500.[16]

### D.   Miscellaneous Costs, Fees, and Expenses

Counsel for the plaintiff requests an award for the following miscellaneous costs, fees, and expenses:

| | | |
|---|---|---|
| Paralegals: | 120.45 hours @ $65 per hour | = $7,829.25 |
| Law Clerks: | 20.50 hours @ $65 per hour | = $1,332.50 |
| Expenses: | | = $7,680.24 |

(Doc. # 87, p. 25). The defendant requests deductions from the expenses total for incompletely documented process server, photocopy, and facsimile expenses, as well as for expenses associated with computer research and mediation. The plaintiff has since supplemented its evidence before the court (Doc. # 90), rendering unpersuasive defendant's objections regarding process server and facsimile expenses. Furthermore, the court finds the expenses associated with computer research and mediation reasonable

---

[16] Given "the size and financial resources of the defendant," such an award should "amount to little more than a 'nuisance' . . . ." (Doc. # 88, p. 13).

expenditures for this litigation and therefore likewise compensable. *See Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983).

The same cannot be said for the photocopying expenses. Counsel for plaintiff has a specific burden of production when asking for photocopying expenses. He must adduce evidence demonstrating the "use or intended use" of the copies made. *See Cullens*, 29 F.3d at 1494; *see also Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D.Ga. 1992). The evidence submitted does delineate among the photocopy charges, breaking the total sum down into number of units and days on which the copies were made. The evidence does not, however, describe with any detail the use or intended use of the copies. Each individual copy entry contains the fields "Matter Description" and "Narrative." (Doc. # 87, Ex. D). The contents of those respective fields, however, are"Bell South" and "Photocopy." This information is insufficient to satisfy counsel's burden of production. Accordingly, the court deducts $1,471.80 in photocopy expenses.

Finally, the defendant objects to certain expenses assigned to law clerk and paralegal work. The first expense the defendant objects to is the expense of 14.25 hours by a law clerk for research into the "defendant's burden of production in Title VII case." (Doc. # 87, Ex. B). The court agrees with the defendant that this charge is excessive, redundant, and otherwise unnecessary. It may well be in the best interests of Mr. Ebbinghouse and his firm to instruct summer (and future) associates in the area of Title VII law, but the defendant is under no obligation to compensate Mr. Ebbinghouse for this decision to do so. Accordingly, the court reduces this entry by thirteen (13) hours. The court also reduces by twenty-five (25) the number of paralegal hours expended during the

16

preparation of witness and exhibit lists. The court agrees with the defendant that the listing of four hundred twenty-six (426) exhibits, for a case of limited complexity like the instant one, is readily excessive, redundant, and otherwise unnecessary.[17]

## V.    Conclusion

Based upon the analysis set forth herein, the court finds the following award of fees, costs, and expenses, due counsel for the plaintiff:

| Richard J. Ebbinghouse: | 437.03 hours @ $200.00 (adjusted) | = $59,500.00 |
|---|---|---|
| Paralegals: | 95.45 hours @ $65 per hour | = $6,204.25 |
| Law Clerks: | 7.50 hours @ $65 per hour | = $487.50 |
| Expenses: | | = $6,208.44 |
| TOTAL | | = $72,400.19 |

The court will enter an order in conformity with this opinion.

---

[17] The court also notes here that it is somewhat skeptical of the accuracy of the billing records kept by the paralegal. The evidence states that on August 10, 2001, the paralegal billed eleven (11) hours for the following work:

> Revised and Corrected Witness and Exhibit List after Richard J. Ebbinghouse's additions and corrections. Formatted file and printed documents for filing with Court. Filed Witness and Exhibit List with Court and with Judge Nelson including a computer disk of the filings.

(Doc. # 87, Ex. B). As counsel for plaintiff is certainly aware, any filing with the court is time-stamped upon receipt. The Plaintiff's Witness and Exhibit List discussed *supra* bears a time-stamp of 4:13 p.m., August 10, 2001. (Doc. # 60). Thus, given this time-stamp and the billing records, the court is left with the following thoughts: (1) the paralegal started work on August 10 at approximately 5:13 a.m., and worked straight through without a break; or (2) the paralegal's hours are not accurate. This paralegal may well be a diligent soul with a work ethic that will go down in legend, but the court's own knowledge and experience leaves it inclined to believe that the hours billed by the paralegal do not correspond to the hours worked on a 1:1 ratio.

17

Done, this 24th of June, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE